25 C.C.P.A.(Patents)

### IRELAND v. SMITH.

Patent Appeal No. 3983.

Court of Customs and Patent Appeals.
June 6, 1938.

Eugene C. Taylor, of Washington, D. C., for appellant.

Raymond D. Smith, pro se (A. D. Adams, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an interference proceeding, wherein the Board of Appeals of the United States Patent Office affirmed a decision of the Examiner of Interferences awarding to appellee priority of invention with respect to all the counts, numbered 1 to 13, inclusive.

Count 13 is illustrative and reads as follows: "13. The combination with a timing mechanism comprising a spring-actuated shaft having an eccentric operatively connected therewith, and also having a member adapted to be actuated by rotation of said shaft to cause it to engage a mechanism to be controlled, of an oscillator having one end engaged with said eccentric and provided with a movable support, a balance wheel yieldingly connected with the opposite end of said oscillator, and a device for relatively moving said support to control the oscillations of the oscillator, whereby the timed operating period of the mechanism may be varied."

The interference arises between a patent to appellant and an application filed by appellee on May 6, 1930. Appellant's patent, No. 1,866,808, was issued on July 12, 1932, upon an application filed May 31, 1930. As appellee is the senior party, the burden was upon appellant to establish priority of invention by a preponderance of evidence.

The claims corresponding to the counts of the interference were copied by appellee from appellant's patent, and were first presented in appellee's application in an amendment dated April 20, 1934.

The general subject matter of the interference is described in the decision of the Examiner of Interferences as follows: "This interference has for its subject matter a clockwork mechanism of a type commonly used to time the actuation of electrical appliances. The various elements of the mechanism are recited in considerable detail by the counts. The important feature of the mechanism is that it may be easily adjusted in a manner which will result in a variation of the operating interval. Specifically, this is accomplished by the provision of a movable pivot supporting a link between the source of power and the oscillating balance wheel which constitutes the load. By shifting this pivot longitudinally of the link the respective lever arms are varied reducing the moment of force applied and increas-

ing the moment of load, and vice versa. * * *"

Both parties filed preliminary statements. Appellant in his preliminary statement alleged that he conceived the invention in issue about January 1, 1929, disclosed it to others about April 1, 1929, and actually reduced the same to practice on July 4, 1929.

Appellee alleged that he conceived the involved invention about August 1, 1915, disclosed it to others on June 15, 1927, began "actively exercising reasonable diligence in adapting and perfecting the invention" on or about October 22, 1926, and actually reduced the invention to practice on or about June 15, 1927.

Appellant made no motion to dissolve the interference upon any ground whatever.

Both parties took testimony.

The Examiner of Interferences found that appellant was entitled to the date of October 12, 1929, for conception of the invention, but that the evidence failed to establish reduction to practice prior to his filing date, May 31, 1930. Said examiner also found that appellant had failed to establish diligence in reducing the invention to practice from immediately prior to appellee's entry into the field to appellant's constructive reduction to practice on appellant's filing date. He therefore awarded priority of invention to appellee.

Said examiner made no finding with respect to appellee's claimed conception and actual reduction to practice prior to his filing date of May 6, 1930.

In the decision of the Examiner of Interferences we find the following: "* * * The brief of the party Ireland appears to question whether the Smith disclosure does in fact support the counts, but since this question was never raised by motion under Rule 122 it may not now be investigated."

Appellant appealed to the Board of Appeals from the decision of the Examiner of Interferences. In that appeal appellant assigned no error upon the part of the Examiner of Interferences in failing to hold that appellee had no right to make the claims corresponding to the counts in issue.

The Board of Appeals affirmed the decision of the Examiner of Interferences in all respects, and from its decision this appeal was taken.

Before us appellant urges that appellee has no right to make the claims corresponding to the counts, and in extenuation of his failure to move to dissolve the interference contends that such motion would have been a useless formality inasmuch as, in the ex parte prosecution of appellee's case, the examiner had rejected the claims copied from appellant's patent as aforesaid upon the ground that the claims were not supported by appellee's application, and the Board of Appeals had reversed the examiner upon this point, holding that appellee's application did support the claims.

Rule 122 of the Patent Office, relating to motions to dissolve an interference, contains the following provision: "* * * If in the opinion of the examiner of interferences the motion be not in proper form, or if it be not brought within the time specified and no satisfactory reason be given for the delay, it will not be considered and the parties will be so notified."

In the ex parte decision of the Board of Appeals, holding that appellee's disclosure supported the claims copied as aforesaid, the board stated: "After the interference is declared, perhaps the patentee may be able to present other reasons or arguments against appellant's right to make his claims but, as we understand the disclosures at this time, we believe that appellant should be allowed to copy them as we think that, if the patentee can prevail, he would assert that appellant would infringe his claims if the substitutions be made which are referred to in the original specification of the application. In any event, we think that the claims are so broad that it is better for them to be made the issue of an interference so that the views of both parties may be made of record; and if there is any uncertainty as to their rights now, the proceedings will doubtless materially clarify the situation. At least, the positions taken by the parties may govern to a large extent their future actions."

Here was a clear suggestion that, after the interference was declared, appellant might enter a motion to dissolve the interference under Rule 122, when the question of appellee's right to make the claims could be further considered, but no such motion was made.

It is well established that there is no reversible error in the refusal of the Patent Office tribunals to pass on a motion to dissolve not brought within the time specified in the Patent Office rules. Rossiter v. Ellis, 74 F.2d 455, 22 C.C.P.A., Patents, 793.

In the instant case no such motion was made at any time.

Finally, we would observe that in the reasons of appeal before us there is no assignment of error that the Board of Appeals failed to hold that appellee had no right to make the claims corresponding to the counts here involved.

For the reasons above given, we must hold that the question of appellee's right to make said claims may not be considered by us.

Two questions of fact remain for consideration:

1. Has appellant established actual reduction to practice of the invention prior to appellee's filing date?

2. If the first question be answered in the negative, has appellant established diligence in reducing the invention to practice from immediately prior to May 6, 1930, appellee's filing date, to May 31, 1930, appellant's filing date and constructive reduction to practice?

The Patent Office tribunals concurred in finding that appellant was entitled to the date of October 12, 1929, for conception of the invention.

Appellant contends that he has established such conception as early as January, 1929, and actual reduction to practice on July 4, 1929.

Appellant testified that he was superintendent of the Waters-Genter Company Division of the McGraw Electric Company; that he conceived the involved invention in January, 1929, and that under his directions a model embodying the invention was completed some time between January 1 and April 1, 1929, and that he successfully tested it on July 4, 1929, in the presence of a very close friend who was visiting him. With reference to this friend appellant testified as follows:

"Q. 86. Do you know where this friend is at the present time? A. No, sir.

"Q. 87. Was this a man? A. Yes, sir."

Appellant introduced in evidence a drawing, marked Exhibit C, which the Examiner of Interferences held disclosed the involved invention. This drawing is

98

dated October 12, 1929, in appellant's handwriting, and he testified that he made the drawing. It was upon the basis of this drawing that appellant, was awarded the date of October 12, 1929, for conception of the invention.

Appellant further testified as follows:

"Q. 104. I hand you a sheet which may be identified by the following title, 'Invoice No. D-10658,' and ask you if you know what this is. A. It is a shipping order or invoice calling for the shipment to Mr. Max McGraw, care McGraw Electric Company, 120 South LaSalle Street, Chicago, Illinois, calling for six household Toastmasters, to be inspected by Mr. Ireland.

"Q. 105. What, if anything, does that shipping order indicate with regard to your development work on the variable speed timer which you have referred to in your previous answers? A. These were out of the first lot of toasters which were manufactured in our production department of the one-lever variable speed timer type.

"Q. 106. Then, as I understand your answer, these toasters included as a part thereof a variable speed timer which had been developed by you? A. Yes, sir, the first production run.

"Q. 107. Did those toasters covered by the shipping order have as a part thereof a variable speed timer of the kind shown in your Patent No. 1866808, which was issued on an application filed May 31, 1930, which application was given serial number 457893 by the Patent Office? A. Exactly.

"Mr. Bieble: Sheet designated by 'Invoice No. D-10658' is offered in evidence as Ireland's Exhibit E."

Said invoice is dated June 23, 1930.

One Oscar Hedin, a witness for appellant, testified that he was a tool maker and ran a tool shop under the name of "Gopher Machine & Tool Works;" that he made certain experimental toaster parts under the direction of appellant; and that he saw a device constructed in accordance with said Exhibit C some time in the Spring of 1929. He further testified as follows:

"XQ. 10. Was this device ever assembled in your shop? A. Yes.

"XQ. 11. Was it first assembled in your shop? A. We built it, so it must have been in parts.

"XQ. 12. Was it assembled under your personal supervision? A. Well, you could call it that. I am foreman there, or running the place.

"XQ. 13. You had knowledge of it? A. Yes.

"XQ. 14. Did you see it operate in the condition it was first assembled? A. I must have seen it, yes.

"XQ. 15. Were there any difficulties in the operation that you recollect? A. I can't say exactly. During experimental stages of anything there is something to give difficulty, but I couldn't say there were any difficulties here. I can't tell you because I don't know.

"XQ. 16. Do you know where that model is at the present time? A. No; that model was turned over to Waters-Genter Company.

"XQ. 17. Can you tell me the approximate date it was turned over to the Waters-Genter Company? A. No, I couldn't tell you that.

"XQ. 18. Did the model or device contain all of the parts which are shown on this drawing? A. Yes; when we got through it contained all those parts."

Harold C. Genter testified that he was an officer of appellant's employer. He could not remember whether he had ever seen appellant's Exhibit C before, and was not able to recollect when the design of the "new toaster and timer" was completed. While the witness was very frank, his testimony is vague and uncertain as to the material issues in this case, which is natural, some six years having elapsed between the giving of his testimony and the occurrence of the events concerning which he was questioned.

Concerning the model which appellant testified to as having been tested on July 4, 1929, the witness testified:

"XQ. 1. Do you remember the first model, Mr. Genter, that Mr. Ireland produced that incorporated the mechanism of Patent No. 1866808? A. I can't say that I do recall the first model. I don't recall.

"XQ. 2. Must it have been the property of the Waters-Genter Company? A. Must it have been?

"XQ. 3. Yes. A. It was the property of the Waters-Genter Company.

"XQ. 4. Could its present whereabouts be located from the company records?

A. I personally am not even sure whether it is in existence right now. We made a practice of saving, particularly in the last five or six years we have been more careful about saving models of that kind. Whether this particular model is in existence or not I can't say to-day.

\* \* \* \* \* \*

"XQ. 8. Would the company records indicate the earliest mechanism like Ireland's Patent 1866808 is at present in the possession of Waters-Genter Company? A. I haven't studied the records of this particular model, so I couldn't answer that question."

With reference to appellant's Exhibit E the witness testified as follows:

"Q. 22. I show you Ireland's Exhibit E, identified as Invoice No. D-10658, and ask what it is? A. Well, this is evidently a duplicate of a shipping order. It says 'Duplicate Invoice,' but it is made right on one of our shipping orders when these first six Toastmasters were shipped to Chicago.

"Q. 23. What, if anything, would that indicate as to the development work which you had asked Mr. Ireland to do? A. Well, it indicates that the development work must have been completed during the spring of 1929 because the dies were—well, all the testing had to be done on the device and the dies had to be built and completed and the assembly line started before this shipment was made. That would have taken the better part of eight or nine months.

"Q. 24. From the information on that sheet can you tell whether those toasters included a clock or timer of the kind which is shown in Mr. Ireland's Patent No. 1866808? A. Yes, it shows the variable speed timer, and those were included in the toasters on this invoice. I wouldn't swear to the details of the patent, but I am talking about the difference in timer."

There is clearly no corroboration of appellant's claim of successful reduction to practice on July 4, 1929.

The claim of a party that devices were fully completed, tested, and operated prior to date of filing an application requires corroboration in order to establish reduction to practice of an invention. Janette v. Folds & Persons, 38 F.2d 361, 17 C.C.P.A. (Patents) 879.

No explanation is given in the testimony of why the close friend of appellant, who, it is claimed, witnessed a successful test of appellant's device, was not called. It is true that appellant testified that at the time of the taking of the testimony he did not know the whereabouts of his friend, but there is no testimony that he made any effort to ascertain his address and secure his testimony.

Neither is there any satisfactory explanation of why the model which appellant testified he tested on July 4, 1929, was not produced. There is no testimony that any search was made for it, or any effort made to ascertain whether it had been lost or destroyed.

There remains the question of diligence upon the part of the appellant in reducing the invention to practice.

We will first consider whether appellant has established diligence in reducing the invention to practice from immediately prior to May 6, 1930, appellee's filing date, until May 31, 1930, appellant's filing date. If appellant has not established such diligence it will not be necessary to consider whether appellee is entitled to dates for conception and reduction to practice of the invention prior to his filing date, May 6, 1930.

Appellant contends that it is established that his employer, the Waters-Genter Company, on June 23, 1930, shipped six complete toasters embodying the invention to Chicago; that before producing such toasters it was necessary to manufacture dies and do a vast amount of work in producing the toasters prior to the shipment thereof on June 23, and therefore appellant must have been diligent in reducing the invention to practice immediately prior to appellee's entry into the field, and thereafter until the shipment of said toasters. Of course, the duty of diligence upon the part of appellant ended on May 31, 1930, his filing date, for his application was a constructive reduction to practice of the invention.

The difficulty with appellant's contention is that there is no evidence of any activity upon appellant's part with respect to the invention immediately prior to appellee's filing date, May 6, 1930. He may have been active for a considerable time prior to appellee's filing date, but any such activity occurring at a time not immediately prior to appellee's filing date

would be of no avail to appellant in establishing diligence.

It would seem that appellant might have established with greater certainty the time when work was performed in the construction of the toasters shipped to Chicago on June 23, 1930. We may surmise that appellant was probably diligent in the matter on May 6, 1930, and immediately prior thereto, and that such diligence continued until May 31, 1930, his filing date; but mere surmise cannot take the place of proof, and there is no proof in the record of such diligence.

In the foregoing we have assumed that the toasters shipped to Chicago on June 23, 1930, embodied all of the elements of the counts before us.

Both of the Patent Office tribunals held that the evidence in behalf of appellant was insufficient to establish that the toasters shipped to Chicago embodied all of the elements of the invention set forth in the counts. We find it unnecessary to decide this point, for, assuming that the Patent Office tribunals were in error in this respect, still there is a lack of proof of diligence during the critical period within which the burden was upon appellant to establish diligence.

For the reasons stated hereinbefore, the decision of the Board of Appeals is affirmed.

Affirmed.